John DOE, Appellant–Plaintiff,

v.

TOWN OF PLAINFIELD, Indiana, Appellee–Defendant.

No. 32A01–0803–CV–133.

Court of Appeals of Indiana.

Sept. 24, 2008.

Kenneth J. Falk, ACLU of Indiana, Indianapolis, IN, William O. Harrington, Harrington Law Firm, P.C., Danville, IN, Attorneys for Appellant.

Melvin R. Daniel, James B. Chapman II, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, Attorneys for Appellee.

Andrew P. Wirick, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, for Amicus Curiae City of Greenwood.

Jo Angela Wood, Indianapolis, IN, for Amicus Curiae Indiana Association of Cities and Towns.

## OPINION

ROBB, Judge.

### Case Summary and Issues

The Town of Plainfield, Indiana ("Plainfield"), enacted Ordinance 16–2002 (the "Ordinance") prohibiting individuals such as John Doe, who are listed on the Indiana sex and violent offender registry, from entering Plainfield's parks and recreation areas. On appeal from the trial court's grant of summary judgment in favor of Plainfield (as well as the denial of Doe's motion for summary judgment), Doe argues the Ordinance violates Article I, Sections 1, 12, and 24, of the Indiana Constitution on its face. Concluding that the Ordinance does not violate any of these constitutional provisions on its face and that the trial court therefore properly granted summary judgment in favor of Plainfield and against Doe, we affirm.

### Facts and Procedural History

On November 25, 2002, Plainfield's town council enacted the Ordinance "to establish reasonable and responsible rules for those individuals who use the parks and other recreational areas owned and operated by the Town of Plainfield ... and to protect [the] health and safety of persons using the parks and other recreational areas." Plainfield, Ind., Ordinance 16–2002, § 1; Appellant's Appendix at 58. The Ordinance defines "park and recreation areas" as "any lands, buildings, structures, waters, parks, trails, drives, and roadways in the Town of Plainfield, Indiana that are under the jurisdiction and control of the Town of Plainfield and the Plainfield Parks and Recreation Department." *Id.* at § 2; Appellant's App. at 58. Section 18 of the Ordinance—the provision at issue here— was enacted to "protect [the] health and safety of persons using the parks and other recreational areas," *id.* at § 1, appellant's app. at 58; it states that "[i]ndividuals listed on the State of Indiana Sex Offender Registry ... are prohibited from all parks and other recreational areas of the Town of Plainfield," *id.* at § 18; appellant's app. at 61. The penalty for violating Section 18 is $100 initially, and $200 for each violation thereafter. *See id.* at § 20; Appellant's App. at 62.

Section 18's reference to "the State of Indiana Sex Offender Registry" means the "sex and violent offender registry" (the "Registry") established under Indiana Code section 36–2–13–5.5. That statute requires Indiana county sheriffs, in conjunction with the Indiana Department of Correction, *see* Ind.Code § 11–8–2–12.4(1), to maintain a website[1] comprised of information from the Registry for the purpose of "inform[ing] the general public about the identity, location, and appearance of

---

1. *See* Indiana Sheriff's Sex and Violent Offender Registry, at http://www.insor.org/ insasoweb/ (last visited Sept. 23, 2008).

every sex or violent offender residing within Indiana,"[2] Ind.Code § 36-2-13-5.5. To fulfill this legislative goal, Indiana Code section 11-8-8-8 requires a "sex or violent offender"[3] to "register" by providing local law enforcement with, among other things, a current address, a current employer's address (if applicable), a description of the offense for which the offender was convicted, and a recent photograph. A sex or violent offender must provide this information to local law enforcement at least once a year. *See* Ind.Code § 11-8-8-14. The registration requirement continues for a period of ten years from the date of the offender's release from a penal facility or placement on probation, *see* Ind.Code § 11-8-8-19(a), but may last a lifetime if the offender is a "sexually violent predator" as defined by Indiana Code section 35-38-1-7.5 or the offender has committed at least two unrelated offenses listed in Indiana Code section 11-8-8-5(a), *see* Ind. Code § 11-8-8-19(b) and (e). Notably absent from the statutes governing the Registry is a provision that permits an offender to remove his information from the Registry after he is no longer required to register, though the parties agree that removal will occur if the offender dies or has his conviction vacated.[4]

Doe is a resident of Marion County and is listed on the Registry based on convictions in 2001 of child exploitation and possession of child pornography. Doe was released from probation in August 2004, and has since acquired joint legal custody of his minor son. Doe visited Plainfield's parks and recreation areas with his son on several occasions in 2004 and 2005, but in June 2005 an officer with the Plainfield Police Department informed him that because he was listed on the Registry, he was prohibited from entering such areas. Doe has not entered Plainfield's parks and recreation areas since June 2005. Absent having his convictions vacated, Section 18, coupled with Doe's status on the Registry, operate to exclude Doe from Plainfield's parks and recreation areas for the rest of his life.

In November 2005, Doe filed a complaint against Plainfield for declaratory and injunctive relief, alleging that Section 18 violated Article I, Sections 1, 12, and 24, of the Indiana Constitution. The parties both filed motions for summary judgment, and, on March 13, 2008, the trial court entered findings of fact and conclusions of law denying Doe's motion and granting Plainfield's. Doe now appeals.

*Discussion and Decision*

I. Standard of Review

Summary judgment is appropriate only if there is no genuine issue as to

2. The website contains less information than the Registry. For example, the Registry contains each offender's social security number, *see* Ind.Code § 11-8-8-8(1), but that information is not displayed on the website, *see* Ind. Code § 11-8-2-12.4(1).

3. Indiana Code section 11-8-8-5(a) defines "sex or violent offender" as a person who has been convicted of a sex offense such as rape, criminal deviate conduct, child molesting, child exploitation, sexual battery, or possession of child pornography, or a non-sex offense such as murder or voluntary manslaughter.

4. The parties' agreement is based on our supreme court's observation in *Doe v. O'Connor*, 790 N.E.2d 985, 987 (Ind.2003), that a "sex and violent offender directory," which was similar to the Registry, but maintained by the Indiana Criminal Justice Institute, stated as much on a website version of the directory. Although the Indiana Criminal Justice Institute is no longer required by statute to maintain this directory, *see* Ind.Code § 5-2-6-3(10) (2005), *repealed by* P.L. 140-2006, § 2, and P.L. 173-2206, § 3, we will assume for purposes of this opinion that death and vacation of a conviction are the only two ways a sex or violent offender may be removed from the Registry.

any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App.2000). In cases such as this one where the trial court enters findings of fact and conclusions of law, the entry of findings and conclusions does not alter our standard of review, as we are not bound by them. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). Instead, the findings and conclusions merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

## II. Constitutional Challenges

■ Doe argues Section 18 of the Ordinance violates Article I, Sections 1, 12, and 24 of the Indiana Constitution on its face. Doe's arguments present pure questions of law, which are well-suited for resolution at the summary judgment stage. *See Young v. City of Franklin*, 494 N.E.2d 316, 317 (Ind.1986). A constitutional challenge to an ordinance requires that we apply the same analysis as a constitutional challenge to a statute. *Dvorak v. City of Bloomington*, 702 N.E.2d 1121, 1124 (Ind. Ct.App.1998). That is, we begin with the presumption that the ordinance is constitutional until clearly overcome by a contrary showing. *See Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind.1996). The party challenging the constitutionality of the ordinance bears the burden of proof, and all doubts must be resolved against that party. *See id.* Moreover, and perhaps most significant for our analysis, a facial challenge to the constitutionality of an ordinance requires the challenging party to demonstrate "that there are no set of circumstances under which the [ordinance] can be constitutionally applied." *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999); *see also Citizens Nat'l Bank of Evansville v. Foster*, 668 N.E.2d 1236, 1242 (Ind.1996) (recognizing that a facial challenge "demands a sweeping pronouncement of the [legislative enactment's] constitutionality regardless of the factual setting").

## A. Article I, Section 1

■ Doe argues Section 18 violates Article I, Section 1, of the Indiana Constitution. That provision states as follows:

WE DECLARE, That all people are created equal; that they are endowed by their CREATOR with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness; that all power is inherent in the People; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement of these ends, the People have, at all times, an indefeasible right to alter and reform their government.

Ind. Const. art. I, § 1. Decisions from our supreme court addressing whether a legislative enactment violates Article I, Section 1, typically begin by identifying the right the plaintiff seeks to vindicate. *See, e.g., Clinic for Women, Inc. v. Brizzi*, 837 N.E.2d 973, 978 (Ind.2005); *O'Connor*, 790 N.E.2d at 989–90; *cf. Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (observing that judicial review of a challenge to legislative action on substantive due process grounds initially involves a " 'careful description' of the asserted fundamental liberty interest" (citation omitted)); *Humphreys v. Clinic for Women, Inc.*, 796 N.E.2d 247, 253 (Ind.2003) (observing, in the context of a challenge under Article I, Section 23, of the Indiana Constitution,

that "[b]efore we can determine whether the legislative classification . . . is permissible, we need to identify the legislative classification at issue"). Here, Doe asserts a right "to enter public parks," presumably for legitimate purposes. Appellant's Brief at 10. Thus, the question becomes whether Article I, Section 1, recognizes the right to enter public parks for legitimate purposes as a "core value" and, if so, whether Section 18 amounts to a "material burden" on that core value. *See City Chapel Evangelical Free Inc. v. City of South Bend,* 744 N.E.2d 443, 450 (Ind.2001); *Price v. State,* 622 N.E.2d 954, 961 (Ind.1993).

Before undertaking the first part of the analysis articulated in *City Chapel* and *Price,* we note that the most recent opinion from this court addressing Article I, Section 1, has stated there is a preceding inquiry, namely, whether the provision creates judicially enforceable rights or merely expresses aspirational principles that are incapable of judicial enforcement. *See Morrison v. Sadler,* 821 N.E.2d 15, 31–32 (Ind.Ct.App.2005); *but cf. Brizzi,* 837 N.E.2d at 998 (Ind.2005) ("I conclude that Article I, Section 1[,] does indeed have substance and is designed to assure all persons in this state 'certain inalienable rights' which are enforceable by the courts. As Chief Justice Shepard put it: '[T]here is within each provision of our Bill of Rights a cluster of essential values which the legislature may qualify but not alienate.' " (quoting *Price,* 622 N.E.2d at 960)) (Boehm, J., dissenting). The panel in *Morrison* relied on our supreme court's observation in *O'Connor* that other state constitutions containing "natural rights" language similar to Article I, Section 1, generally "had not been interpreted 'to provide a sole basis for challenging legislation since the language is not so complete as to provide courts with a standard that could be routinely and uniformly applied.' " *Morrison,* 821 N.E.2d at 31 (quoting *O'Connor,* 790 N.E.2d at 991). More recently, however, in *Brizzi,* our supreme court failed to address the defendant's argument that Article I, Section 1, did not create judicially enforceable rights, concluding instead that the legislative enactment at issue was constitutional because it did not "impermissibly impinge upon any right to privacy or right to abortion that might exist"—in other words, the legislative enactment did not violate the second part of the test articulated in *City Chapel* and *Price.* 837 N.E.2d at 978. The panel in *Morrison* took a similar approach, declining to address whether Article I, Section 1, creates judicially enforceable rights because "the Plaintiffs do not succeed in their argument that that provision contains a 'core value' right to enter into government-sanctioned same-sex marriages." 821 N.E.2d at 34. Consistent with *Brizzi* and *Morrison,* because we conclude below that the right to enter public parks for legitimate purposes is not a right that Article I, Section 1, recognizes as a core value, we decline to address the more substantial question of whether Article I, Section 1, creates judicially enforceable rights.

■ "[W]hat amounts to a constitutional 'core value' is a judicial question that depends on the purpose for which a particular constitutional guarantee was adopted and the history of Indiana's constitutional scheme." *Id.* at 33 (citing *Price,* 622 N.E.2d at 961). It is worth describing in detail the analysis undertaken to resolve this judicial question. In *Price,* for example, our supreme court concluded that although Article I, Section 9,[5] does not "expressly refer to political

---

5. Article I, Section 9, states: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject

speech," 622 N.E.2d at 961, it nevertheless "enshrines pure political speech as a core value," *id.* at 963 (footnote omitted). The *Price* court reached this conclusion based on revisions to Article I, Section 9, during the 1850–1851 constitutional convention, noting that prior to 1851, that provision specifically prohibited laws restraining political speech, but that Article I, Section 9, as enacted in 1851 omitted this guarantee. The court reasoned that although one inference is that the omission reflected "diminished regard for the importance of political expression," the more reasonable inference was "that by 1850 the importance of free interchange on public affairs was well accepted and, therefore, the need to highlight its role in the maintenance of republican government was no longer so compelling." *Id.* at 962. The court therefore concluded that the "drafters of the 1851 Bill of Rights merely folded protection for political speech into the existing 'freedom and responsibility' equation" of Article I, Section 9, and thus reaffirmed political speech as a core value. *Id.*

In *City Chapel*, our supreme court undertook a similar analysis in concluding that Article I, Sections 2 and 3,[6] recognized both public and private religious worship as a core value. *See* 744 N.E.2d at 450. The court noted initially that these provisions did not undergo substantial amendments during the 1850–1851 convention, and then went on to parse the language of Sections 2 and 3 in substantial detail, while also discussing how the 1850–1851 convention debates informed this language. *See id.* at 447–49. Based on this analysis, the court rejected an interpretation of Article I, Sections 2 and 3, as affording "only narrow protection for a person's internal thoughts and private practices of religion and conscience," and concluded instead that these provisions "advance core values that restrain government interference with the practice of religious worship, both in private and in community with other persons." *Id.* at 450.

In contrast to the core value right to political speech as guaranteed in Article I, Section 9, and the core value right to public and private religious worship as guaranteed in Article I, Sections 2 and 3, the rights guaranteed (or, perhaps more accurately, the natural rights recognized as inalienable) in Article I, Section 1, are expressed in language so broad—"life, liberty, and the pursuit of happiness," among other rights—that it is impossible to conclude from the text itself that the provision recognizes, as a core value, the right to enter public parks for legitimate purposes. *Cf. Morrison*, 821 N.E.2d at 33 (describing Article I, Section 1, as "a constitutional provision of vague import"). Nor is the meaning of this broad language sharpened by an examination of "the history of Indiana's constitutional scheme." *Id.* The predecessor to Article I, Section 1, was substantially similar to the current version,[7] and therefore offers no further in-

---

whatever: but for the abuse of that right, every person shall be responsible."

**6.** Article I, Section 2, states: "All people shall be secured in the natural right to worship ALMIGHTY GOD, according to the dictates of their own consciences." Article I, Section 3, states: "No law shall, in any case whatever, control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience."

**7.** Specifically, Article I, Section 1, of the 1816 Indiana Constitution states as follows: "That the general, great and essential principles of liberty and free Government may be recognized and unalterably established; WE declare, That all men are born equally free and independent, and have certain natural, inherent, and unalienable rights; among which are the enjoying and defending life and liberty, and of acquiring, possessing, and protecting

sight as to whether the right to enter public parks for legitimate purposes is a core value. Moreover, the only historical evidence Doe cites to support his argument that this right is a core value is a statement from a Ripley county delegate during the 1850–1851 convention that natural rights include "the right to walk abroad and look upon the brightness of the sun at noon-day[.]" 1 Debates in Indiana Convention 968 (1850). This is hardly evidence that Article I, Section 1, recognizes the right to enter parks for legitimate purposes, let alone that the provision recognizes such a right as a core value. Indeed, a contrary conclusion would place considerable value on what is otherwise an isolated statement from a single delegate—the 1850–1851 convention lasted from October 7, 1850, to February 10, 1851, *see* 1 Charles Kettleborough, Constitution Making in Indiana, at lxxxix (1971), and produced a two-volume transcript in excess of 2,000 pages—and would be in tension with our supreme court's decisions in *Price* and *City Chapel,* both of which relied on far more historical evidence and analysis in concluding the constitutional provisions at issue recognized certain rights as core values.

 We conclude that Article I, Section 1, does not recognize the right to enter public parks for legitimate purposes

as a core value, and it therefore follows that Doe's argument that Section 18 violates Article I, Section 1, on its face must fail.[8]

### B. Article I, Section 12

 Doe argues Section 18 violates Article I, Section 12, of the Indiana Constitution. That provision states, "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Ind. Const. art. I, § 12. Our supreme court has recognized Article I, Section 12, contains a substantive component requiring legislative enactments to be rationally related to a legitimate legislative goal. *See McIntosh v. Melroe Co.,* 729 N.E.2d 972, 979 (Ind.2000). Stated somewhat differently from a rights perspective, Article I, Section 12, recognizes that individuals have a right to be free from arbitrary government treatment. *See Prior v. GTE North Inc.,* 681 N.E.2d 768, 775 (Ind. Ct.App.1997), *trans. denied.* This inquiry is similar to rational basis review under federal substantive due process analysis. *See McIntosh,* 729 N.E.2d at 976, 979–80.

 Doe does not appear to argue that the purported purpose of Section 18, "to

---

property, and pursuing and obtaining happiness and safety."

8. Although we do not rely on authority interpreting the federal constitution, to the extent that the test for determining a core value under the Indiana constitution is similar to the test for determining a "fundamental liberty interest" under the due process clause of the Fourteenth Amendment, *see Glucksberg,* 521 U.S. at 721, 117 S.Ct. 2258, 138 L.Ed.2d 772, we note that a general right to enter parks has never been recognized as "fundamental." *See Doe v. City of Lafayette,* 377 F.3d 757, 772–73 (7th Cir.2004) ("[A]ssuming the record would support [the plaintiff's] con-

tention that he is seeking a right to enter public parks simply to wander and loiter innocently, we cannot characterize that right as 'fundamental.' ") (en banc); *Standley v. Town of Woodfin,* 362 N.C. 328, 661 S.E.2d 728, 731 (2008) ("Plaintiff's asserted liberty interest to enter and freely roam in the park is simply not comparable to those rights deemed fundamental ...." (citing *Doe,* 377 F.3d at 772–73)); *see also Brown v. City of Michigan City,* 462 F.3d 720, 733 (7th Cir.2006) (recognizing that the plaintiff "does not challenge *Doe's* conclusion that the right to enter a park is not fundamental").

protect [the] health and safety of persons using the parks and other recreational areas," is an illegitimate legislative goal. Plainfield, Ind., Ord. 16–2002, § 1; Appellant's App. at 58. Instead, Doe argues that excluding all individuals listed on the Registry is not rationally related to this goal. To support this argument, Doe points out that the Registry's website disavows commenting on a sex or violent offender's likelihood of re-offending, as it states that "[i]nformation contained on this site provides no representation as to any offender's likelihood of re-offending or the nature of any future crimes that may be committed," Indiana Sheriff's Sex and Violent Offender Registry, at http://www.insor.org/insasoweb/ (last visited Sept. 23, 2008), and that due to the absence of a statutory procedure allowing for removal from the Registry, an individual listed on it is excluded from Plainfield's parks and recreation areas notwithstanding that the individual is no longer required to register.

Whatever merit these points may have in challenging the rationality of Section 18 as applied to particular individuals listed on the Registry, by no means do they foreclose constitutional application of Section 18 in all instances, which is the hurdle Doe must clear in bringing a facial challenge. *See Baldwin,* 715 N.E.2d at 337. Viewed under this standard, Doe overlooks that the Registry includes anyone who is designated as a "sexually violent predator" under Indiana Code section 35–38–1–7.5. *See* Ind.Code § 11–8–8–8(5). One way a person is designated as a sexually violent predator is by judicial finding after an evidentiary hearing, which must include testimony from psychologists or psychiatrists who are experts in criminal behavior disorders. *See* Ind.Code § 35–38–1–7.5(a) and (e); *Marlett v. State,* 878 N.E.2d 860,

871 (Ind.Ct.App.2007), *trans. denied.* If a judicial finding has been made, the individual is defined by statute as a person "who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense." Ind.Code § 35–38–1–7.5(a). We cannot say that excluding such individuals from Plainfield's parks and recreation areas lacks a rational relationship to Section 18's goal. *Cf. Doe,* 377 F.3d at 773 (concluding that excluding the plaintiff from the city's parks was rationally related to legislative goal of protecting children because the plaintiff "admits that he is a sexual addict who always will have inappropriate urges toward children"). Thus, it follows that Section 18 does not violate Article I, Section 12, on its face.

### C. Article I, Section 24

Doe argues Section 18 violates Article I, Section 24, of the Indiana Constitution because it punishes him retroactively.[9] Article I, Section 24, states, "No ex post facto law, or law impairing the obligation of contracts, shall ever be passed." Ind. Const. art. I, § 24. The provision prohibits a law from imposing a punishment for an act that was not punishable at the time it was committed or from imposing additional punishment beyond the measure prescribed at the time. *Spencer v. O'Connor,* 707 N.E.2d 1039, 1042 (Ind. Ct.App.1999), *trans. denied.* Determining whether a law violates Article I, Section 24, involves the same analysis as determining whether a law violates the ex post facto clause of the federal constitution. *Id.* This analysis requires that we first determine whether the legislative body intended the proceedings to be civil or criminal. *Id.* If the legislative intent is criminal, the law is necessarily punitive and violates the ex post facto clause. *See Smith v. Doe,* 538

---

9. Doe was convicted of his crimes in 2001, thus making him eligible for the Registry, while Section 18 was enacted in November 2002.

U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). If, however, the legislative intent is civil (and therefore nonpunitive), we must determine whether the law is nevertheless "so punitive either in purpose or effect as to negate" the legislature's nonpunitive intent. *Id.* In making this determination, " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (quoting *Hudson v. United States,* 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)).

■ Doe concedes that the Plainfield town council's intent in enacting Section 18 was for a civil, nonpunitive purpose.[10] Doe characterizes this purpose as "protect[ing] the public from sex offenders," appellant's br. at 34 (citation omitted), but we characterize the purpose as simultaneously more broad and more narrow; that is, Section 18's aim is not to protect the entire public, but that portion of the public who uses Plainfield's parks and recreation areas, and it does not exclude sex offenders only, it excludes anyone who is a "sex or violent offender," a term that may include an individual who has not been convicted of a sex offense, *see* Ind.Code § 11–8–8–5(a)(18) and (19). Regardless, because Doe concedes Section 18 evidences a civil, nonpunitive purpose, the question becomes whether Doe has presented "the clearest proof" of Section 18's punitive nature. In making this determination, the Supreme Court has stated that a reviewing court should consider, "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or

restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith,* 538 U.S. at 97, 123 S.Ct. 1140 (citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). These factors are "neither exhaustive nor dispositive," and serve instead as "useful guideposts" in determining whether the law's civil purpose has been negated. *Id.* (citations omitted). We will address each of these factors in turn.

### 1. Historically Regarded as Punishment

Doe argues that by prohibiting a sex or violent offender from entering Plainfield's parks and recreation areas, Section 18 operates as a form of banishment, which has historically been a form of punishment. To support this argument, Doe cites the Supreme Court's observation in *Smith* that "[t]he most serious offenders were banished, after which they could neither return to their original community nor, reputation tarnished, be admitted easily into a new one," appellant's br. at 36 (quoting 538 U.S. at 98, 123 S.Ct. 1140), and its observation in *Kennedy* that "banishment and exile have throughout history been used as punishment ... [.] Banishment was a weapon in the English legal arsenal for centuries ... but it was always 'adjudged a harsh punishment even by men who were accustomed to brutality in the administration of criminal justice,' " *id.* (quoting 372 U.S. at 168 n. 23, 83 S.Ct. 554 (citation omitted)).

However, these opinions make clear that banishment means permanent expulsion from a community. Indeed, courts have

---

**10.** Doe's concession thus distinguishes this case from our recent opinion in *State v. Pollard,* 886 N.E.2d 69 (Ind.Ct.App.2008). Not only was *Pollard* an as applied challenge, but in that case we concluded that a statute providing felony penalties for certain sex offenders who resided within 1,000 feet of a school or other areas was a criminal statute and therefore punitive. *See id.* at 73–74.

consistently rejected claims that a legislative enactment constitutes punitive banishment where it fails to rise to this level. *See Doe v. Miller*, 405 F.3d 700, 719 (8th Cir.2005) (concluding that a statute restricting sex offenders from residing within 2,000 feet of a school or child care facility did not amount to total banishment because "[i]t does not 'expel' the offenders from their communities or prohibit them from accessing areas near schools or child care facilities for employment, to conduct commercial transactions, or for any purpose other than establishing a residence"), *cert. denied*, 546 U.S. 1034, 126 S.Ct. 7576, 163 L.Ed.2d 574 (2005); *State v. Seering*, 701 N.W.2d 655, 667–68 (Iowa 2005) (concluding that the same statute at issue in *Miller* is "far removed from the traditional concept of banishment" because "[o]ffenders are not banished from communities and are free to engage in most community activities"); *People v. Leroy*, 357 Ill.App.3d 530, 293 Ill.Dec. 459, 828 N.E.2d 769, 780 (2005) (concluding that a statute restricting sex offenders from residing within 500 feet of a school or child care facility did not amount to total banishment because "[t]he record in this case is completely devoid of evidence that the defendant cannot return to his original community ... or that he cannot be admitted easily into a new community"), *appeal denied*. Here, Section 18 does not banish sex or violent offenders from the entire Plainfield community; rather, it merely restricts such offenders from a subset of that community. As such, we cannot conclude Doe has presented the clearest proof that Section 18 operates to banish sex or violent offenders in a manner that is wholly consistent with historical forms of punishment.

2. Affirmative Disability or Restraint

 Doe argues Section 18 acts as an affirmative disability or restraint because it permanently excludes sex or violent offenders "from an extremely important area of public life...." Appellant's Br. at 38. We agree with Doe's argument to an extent, as Section 18 certainly "disables" or "restrains" him from entering Plainfield's parks and recreation areas on pain of a monetary fine. However, exclusion from a park is far less of a disability or restraint than imprisonment[11]—a form of disability or restraint the Supreme Court has described as "paradigmatic." *See Smith*, 538 U.S. at 100, 123 S.Ct. 1140. Moreover, Section 18 does not prohibit sex or violent offenders from entering other public areas of Plainfield. *Cf. Standley v. Town of Woodfin*, 650 S.E.2d 618, 622 (N.C.Ct.App.2007) (concluding a statute prohibiting sex offenders from knowingly entering the town's parks was not an affir-

---

11. In the statement of facts section of his brief, Doe reiterated the trial court's finding that violation of Section 18 subjects an individual to prosecution for criminal trespass. We are not bound by the trial court's findings, *see Rice*, 670 N.E.2d at 1283, and note that the designated evidence on this point was equivocal at best, *see* appellant's app. 56 (deposition testimony of Plainfield's town manager: "Q Are they also subject to criminal trespass, referring specifically to Section 18, someone who shows up in the park who is not allowed to be there, if you know? A Well, I don't know. I'm assuming that that's why the fines are in there. Q Okay. But you don't know whether they're subject to criminal tres-

pass, that would be a police matter? A That would be a police matter"). Regardless, even if violation of Section 18 did subject an individual to criminal trespass, imprisonment authorized by the criminal trespass statute would not inform whether Section 18 amounts to an affirmative disability or restraint because ex post facto analysis requires that a reviewing court examine the factors outlined in *Smith* "in relation to the [law] *on its face*," and the ordinance does not prescribe imprisonment. *Willis v. State*, 806 N.E.2d 817, 822 (Ind.Ct.App.2004) (emphasis in original) (citing *Hudson*, 522 U.S. at 100, 118 S.Ct. 488).

mative disability or restraint because such offenders "may still travel freely and attend to their daily functions"), *aff'd on other grounds,* 362 N.C. 328, 661 S.E.2d 728 (2008). As such, we cannot conclude Doe has presented the clearest proof that Section 18 constitutes an affirmative disability or restraint.

### 3. Promoting Punishment and Relation to Nonpunitive Purpose

Doe argues that Section 18 promotes traditional aims of punishment because it will deter criminal behavior. Although we agree with Doe that deterrence is a traditional aim of punishment and that Section 18 undoubtedly deters criminal activity, the Supreme Court has cautioned that a law's deterrent aspects do not automatically make it punitive. *See Smith,* 538 U.S. at 102, 123 S.Ct. 1140 ("Any number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions "criminal" ... would severely undermine the Government's ability to engage in effective regulation' " (citation omitted)). Indeed, courts appear to minimize a law's deterrent aspects if the law satisfies the fourth factor; that is, the law's rational relation to a nonpunitive purpose. *See id.* at 102, 123 S.Ct. 1140 (stating that the fourth factor is the most significant); *Miller,* 405 F.3d at 721. In this respect, we have already concluded in the context of Doe's argument under Article I, Section 12, that Section 18 is rationally related to the legitimate goal of protecting individuals who use Plainfield's parks and recreation areas, *see supra,* Part II.B., and our conclusion applies equally here. Thus, although Section 18 undoubtedly deters criminal behavior, such evidence is not the clearest proof of a punitive purpose in light of the fact that Section 18 is rationally related to the legit-

imate, nonpunitive goal of protecting health and safety.

### 4. Excessiveness

Doe appears to argue Section 18 is excessive because it lacks a rational relationship to a nonpunitive purpose, which is an argument we have already rejected. *See* Appellant's Br. at 40 ("To ban [Doe], merely because of his past offenses, is clearly excessive and fails to have a rational connection with any non-punitive purpose."). Nevertheless, we also note that to the extent Doe argues Section 18 is excessive because it bans sex or violent offenders who present no risk of re-offending, such evidence does not necessarily render the provision excessive. *See Miller,* 405 F.3d at 721 ("The absence of a particularized risk assessment, however, does not necessarily convert a regulatory law into a punitive measure, for '[t]he Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences.' " (quoting *Smith,* 538 U.S. at 103, 123 S.Ct. 1140)). Moreover, even if we did conclude Doe presented the clearest proof that Section 18 is excessive, the remaining factors compel a conclusion that Section 18 is not punitive.

■■■ In sum, we agree with Doe that certain aspects of Section 18 evidence a punitive purpose when the factors outlined in *Smith* are applied. Such a showing, however, does not carry the heavy burden of establishing "the clearest proof" that Section 18's concededly civil, nonpunitive purpose has been negated. Thus, it follows that Section 18 does not violate Article I, Section 24, on its face.

### Conclusion

Section 18 does not violate Article I, Sections 1, 12, and 24, of the Indiana Constitution on its face. As such, the trial

court properly granted summary judgment in favor of Plainfield and against Doe.

Affirmed.

BAKER, C.J., and RILEY, J., concur.