## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 23 2020, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Angela Thompson, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | April 23, 2020 <br><br> Court of Appeals Case No. 19A-CR-2370 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Kenneth Lynn Lopp, Judge Pro Tempore <br><br> Trial Court Cause No. 10C02-1702-F3-6 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Angela Thompson (Thompson), appeals the trial court's sentence following her guilty plea to criminal recklessness with a deadly weapon, a Level 6 felony, Ind. Code § 35-42-2-2; and possession of cocaine, a Level 3 felony, I.C. § 35-48-4-6.

We affirm.

# ISSUES

Thompson presents two issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion in identifying the mitigating and aggravating circumstances; and

(2) Whether Thompson's sentence is inappropriate in light of her character and the nature of the offenses.

# FACTS AND PROCEDURAL HISTORY

On January 28, 2017, Clarksville Police Department officers Randy Thomas (Officer Thomas) and Tyler Jackson were dispatched to a Best Inn motel in response to a phone call from a motel employee that a guest in room 128, later identified as Thompson, had pointed a firearm at motel staff. Upon arrival at the motel, the officers walked toward the motel staff standing in the laundry room located near room 136. When motel staff directed the officers' attention to Thompson's door, the officers observed Thompson "straddling the door" of

room 128 while pointing a handgun toward them. (Appellant's App. Vol. II, p. 5). Officer Thomas immediately drew his weapon and the motel staff took cover in the laundry room. Thompson retreated into the motel room and slammed the door.

[5] More officers arrived and nearby guest rooms were evacuated. When an officer contacted Thompson by telephone requesting her to leave the room, she responded, "I am not coming out of the room and I am not giving up the firearm, you all are going to have to come in here and get me." (Appellant's App. Vol. II, p. 5). After the SWAT team arrived and took control of the situation, Thompson exited the room unarmed and was taken into custody.

[6] After entering the room, the SWAT team located a semi-automatic handgun with a loaded magazine in a nightstand drawer. In plain view, they located lines of a white powdery substance identified as cocaine. There was a plastic bag on the table, next to the lines, containing more cocaine. Additional cocaine was discovered in a plastic bag hidden in a pair of pajama pants.

[7] On February 2, 2017, the State filed an Information, charging Thompson with criminal recklessness with a deadly weapon, a Level 6 felony; possession of cocaine, a Level 3 felony; and carrying a handgun without a license, a Class A misdemeanor. On February 21, 2018, Thompson was released on her own recognizance. As she failed to appear for a subsequent hearing, the trial court issued a warrant for her arrest on June 20, 2018. On May 13, 2019, Thompson pled guilty to Level 6 felony criminal recklessness with a deadly weapon and

Level 3 felony possession of cocaine. On June 17, 2019, the trial court conducted a sentencing hearing and sentenced Thompson to one year for criminal recklessness suspended to probation and to nine years for possession of cocaine with four years suspended to probation, with sentences to run concurrently.

[8] Thompson now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

### I. *Mitigating and Aggravating Circumstances*

[9] Thompson contends that the trial court abused its discretion when it failed to identify certain mitigating factors and mentioned certain aggravating circumstances. So long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id*. at 490-91.

[10] With respect to mitigating circumstances, Thompson asserts that the trial court failed to consider a defense witness' testimony that she would respond affirmatively to probation or short-term imprisonment. However, a review of the sentencing transcript indicates that the trial court considered this factor, as the court expressly noted the "testimony of witnesses" prior to pronouncing sentence. (Transcript p. 19). Likewise, Thompson claims that the trial court failed to consider her post-traumatic stress disorder as a possible mitigating circumstance. Even though evidence of possible post-traumatic stress disorder was presented through the testimony of a defense witness and Thompson herself, the trial court is not obligated to "credit or weigh a possible mitigating circumstance as defendant suggests it should be credited or weighed." *Archer v. State*, 689 N.E.2d 678, 684 (Ind. 1997).

[11] Turning to the trial court's identification of aggravators, Thompson challenges the trial court's finding of her prior criminal history as an aggravating circumstance. Specifically, she maintains that "[t]he mere fact of a criminal record is not sufficient to aggravate a sentence. The trial court has to consider the weight of the individual defendant's history" which is measured by the number of prior convictions, similarity, and their proximity to the instant offense. (Appellant's Br. p. 10). A defendant's criminal history is a valid aggravating factor. *See* I.C. § 35-38-1-7.1(a)(2). Thompson's criminal history is extensive and includes 10 misdemeanors and one felony. In reviewing Thompson's history, the trial court noted "a continued pattern here that just continues. Different types of cases, but some similar as to what is pending here.

. . .There are some other substance abuse cases and drug and alcohol abuse."
(Tr. p. 19). Accordingly, as the trial court considered the similarity and
proximity of the charges in Thompson's criminal history, the trial court did not
abuse its discretion in finding her criminal record as a valid aggravator.

## II. *Inappropriateness of Sentence*

[12] Thompson also requests that we independently review the appropriateness of
her sentence. "Even when a trial court imposes a sentence within its discretion,
the Indiana Constitution authorizes independent appellate review and revision
of this sentencing decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019).
Thus, we may alter a sentence if, after due consideration of the trial court's
decision, we find that the sentence is inappropriate in light of the nature of the
offense and the character of the offender. *Id*. The principal role of such review
is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225
(Ind. 2008). The defendant bears the burden to persuade the reviewing court
that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574,
577 (Ind. 2018).

[13] In considering the appropriateness of a sentence, we recognize the advisory
sentence is the starting point the Legislature selected as appropriate for the
crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). As such, the
maximum sentence for a Level 3 felony is sixteen years, with nine years being
the advisory sentence. I.C. § 35-50-2-5(b). The maximum sentence for a Level
6 felony is two-and-a-half years, with one year being the advisory sentence. I.C.
§ 35-50-2-7(b). Here, the trial court sentenced Thompson to one year for

criminal recklessness suspended to probation and to nine years for possession of cocaine with four years suspended to probation.

[14] With respect to the nature of the crime, we do not turn a blind eye to "facts of the incident that brought the defendant before" us or the "nature and circumstances of the crime as well as the manner in which the crime is committed." *Bethea v. State*, 893 N.E.2d 1134, 1145 (Ind. 2013). The nature of the crime is particularly troublesome. Thompson was in a public place—a hotel hallway—brandishing a loaded handgun, frightening hotel employees, and threatening police officers. Not only did Thompson refuse to leave peacefully, the SWAT team had to be mobilized to place her under arrest. After she was in custody, officers located 16 grams of cocaine—60% more than the minimum amount that would support a Level 3 felony—with some of it poured into lines, ready for use.

[15] Likewise, Thompson's character does not warrant a downward revision of her sentence. A defendant's willingness to continue committing crimes is relevant for analysis of her character under Appellate Rule 7(B). *Garcia v. State*, 47 N.E. 3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*. Thompson's criminal history is a lengthy one going back almost two decades. In 2001, Thompson was convicted for criminal trespass in the third degree. In 2002, Thompson was convicted for operating a motor vehicle under the influence of drugs or alcohol. In 2007, she was convicted for possession of a controlled substance in the third degree. Three years later, in 2010, Thompson was convicted for disorderly conduct in the first degree. That same year, she was convicted for operating a

motor vehicle under the influence of drugs or alcohol. In 2014, she was convicted for harassment involving physical contact. Also in 2014, she incurred a conviction for disorderly conduct in the second degree, and terroristic threatening in the third degree. In 2018, she was convicted for theft, a Class A misdemeanor, and later that same year, she was convicted for possession of a narcotic drug, a Level 6 felony. Her sentences have ranged from executed time to suspended sentences; and after being released on her own recognizance in the present case, she committed a pretrial release violation by failing to appear for a hearing in this cause. Additionally, the trial court, while considering Thompson's criminal record, reflected on the "escalation" shown in the progression of charges. (Tr. p. 20). Thompson's PSI indicated that she is a moderate risk to reoffend, but she also rated as a high risk to reoffend on three out of the seven risk categories. As a result, Thompson is a poor candidate for probation or a suspended sentence. *See Malenchik v. State,* 928 N.E.2d 564, 575 (Ind. 2010) (observing that courts may use risk assessment instruments in formulating a manner in which a sentence is to be served).

[16] While Thompson's mental health issues of bipolar disorder and post-traumatic stress disorder appeared to have existed for some time, she failed to demonstrate a nexus between her mental health and the offenses or that her mental health limited her ability to function. Although we are sympathetic for Thompson's loss of her husband approximately one month before the instant offense, we also acknowledge that his death occurred during "a drug deal gone

bad." (Tr. p. 14). Thus, rather than being deterred from drugs and firearms, Thompson endangered others by possessing and using both.

[17] Thompson also claims to have epilepsy, has taken college courses, maintained employment in the three years leading up to this cause, and has abstained from alcohol for several years. However, even taking these considerations into account, we cannot say that she possesses substantial virtuous traits or persistent examples of good character. *See Phipps v. State*, 90 N.E.3d 1190, 1199 (Ind. 2018) (evidence that defendant suffered from bipolar disorder, achieved some college education and maintained a stable work history did not render sentence inappropriate where she had squandered prior chances at reform). Therefore, in light of the facts before us, we conclude that the trial court's imposed sentence is not inappropriate.

## CONCLUSION

[18] Based on the foregoing, we hold that the trial court properly identified the mitigators and aggravators and Thompson's sentence is not inappropriate in light of the offense and her character.

[19] Affirmed.

[20] Mathias, J. and Tavitas, J. concur