## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 04 2020, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
Navarre, Florida

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn Nieman-Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marcus L. Manns, *Appellant-Defendant,* | November 4, 2020 |
| v. | Court of Appeals Case No. 20A-CR-105 |
| | Appeal from the LaPorte Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Michael Bergerson, Judge |
| | Trial Court Cause Nos. 46D01-1901-F2-82 & 46D01-0610-MR-174 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Marcus Manns (Manns), appeals his conviction for burglary, a Level 2 felony, Ind. Code § 35-43-2-1(3)(A), and robbery, a Level 3 felony, I.C. § 35-42-5-1(a)(1).

We affirm.

# ISSUES

Manns presents this court with three issues on appeal, which we restate as:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his conviction;

(2) Whether the trial court abused its discretion at sentencing; and

(3) Whether Manns sentence is inappropriate in light of the nature of the offenses and his character.

# FACTS AND PROCEDURAL HISTORY

On the evening of March 7, 2018, Jabar Wilson (Wilson) was washing dishes in his home when he heard an unexpected knock on the door. Wilson asked who it was, and the person on the other side of the door identified himself as "Dontu." (Transcript Vol. III, p. 82). Because Wilson had a family friend named Dontu, he opened the door. A man armed with a handgun entered his home and two other men followed. Wilson back-pedaled into the couch, and as he began to fall, one of the men struck him in the head with a gun. Wilson

then heard one of the men yell, "[g]rab him," but Wilson succeeded in running out of the house. (Tr. Vol. III, p. 86). As he fled his home, he hurt his knee on a concrete slab. Wilson however picked himself up and limped over to his neighbor's house and his neighbor called 911.

[5] Wilson's wife and three children, ages nine, eleven, and fourteen, were still inside the house. After Wilson fled his home, one of the robbers forced open the door to a bedroom and pointed a gun at Wilson's eleven-year-old son. The gunman and a second robber then moved on to another bedroom where they searched under the mattress and opened drawers. Before the men ran out of the house, one of them took Wilson's wallet which was sitting on the kitchen counter.

[6] Shortly after the robbers had left, Officer Deshone Harris (Officer Harris) of the Michigan City Police Department arrived at the scene. Officer Harris spoke with Wilson and Wilson's wife. The following day, March 8, 2018, Wilson's wife sent video clips to Officer Harris of their home surveillance video which showed three men approaching Wilson's house on the day of the robbery, Wilson hobbling, and the robbers fleeing Wilson's home. On the same day, Detective Melissa Sopher (Detective Sopher) was assigned to the case. After watching the surveillance video from Wilson's house, Detective Sopher took several screen shots of the men. She noticed that one of the men had a beard.

[7] On March 15, 2018, Detective Sopher spoke with Wilson, and Wilson stated that the three robbers were African American men—the first suspect was "a

lighter skinned black male" with short hair, the second suspect was a "dark skinned black male with dread locks and the third suspect had a thick beard." (Appellant's App. Vol. II, p. 19). Wilson claimed that the first suspect, the armed gun man, was possibly Cary Arnold Jr. (Arnold Jr.). Wilson's wife identified the bearded man as Manns. Then during a forensic interview, two of Wilson's children consistently stated that one of the robbers had dreadlocks.

[8] Detective Sopher searched Facebook for Arnold Jr, but found Arnold Jr.'s father, Cary Arnold Sr. (Arnold Sr.). Upon further research, she discovered that Arnold Sr.'s son and Arnold's brother, Keenan Arnold (Keenan), had dreadlocks, which made it more likely that he was one of the suspected robbers. Detective Sopher later prepared separate photo line ups of Arnold Jr., Keenan, and Manns. Wilson recognized Arnold Jr as the gun man that entered his house first. He also identified Keenan, however, he "could not be positive" if Keenan was one of the robbers, but Keenan's eyes did stand out to him. (Appellant's App. Vol. II. p. 21). Wilson also identified Manns from the photo lineup but he "could not be positive [if Manns] was one of the suspects" but stated that "he recognized the beard." (Appellant's App. Vol. II, p. 21).

[9] In August 2018, Arnold Jr. was arrested and detained at the Laporte County Jail. At a subsequent interview, Arnold Jr. denied any involvement in the home invasion and he claimed that he was in Minnesota at the time the crimes occurred. On December 17, 2018, Arnold Jr. was again interviewed with his attorney present at the Laporte County Jail. Arnold Jr. admitted his involvement in the home invasion, and he claimed that his brother, Keenan,

and Manns, whom he knew as "Nine," were the other two robbers. (Appellant's App. Vol. II, p. 21).

[10] On January 16, 2019, the State filed an Information, charging Manns with Level 2 felony burglary and Level 3 felony robbery. A jury trial was held on October 21 through 24, 2019. Arnold Jr admitted that he participated in the home invasion to look for drugs in Wilson's home, and that Keenan and Manns were the other two robbers. Counsel for both Manns and Keenan attempted to undercut the reliability of Arnold Jr.'s testimony claiming that he had a motive to lie, emphasized that Wilson's children were unable to identify the perpetrators, offered alternative suspects, and suggested that the police investigation was inadequate and incomplete. At the close of the evidence, the jury found both Manns and Keenan guilty of Level 2 felony burglary and Level 3 felony robbery.

[11] On December 12, 2019, the trial court conducted a sentencing hearing. At the time of his sentencing hearing, Manns was thirty-two years old. The trial court acknowledge Manns' criminal history which involved a conviction for a Class B felony aggravated battery and a Class C felony reckless homicide in 2007, and a 2016 conviction for a Level 6 felony resisting law enforcement. Manns apologized to the victim's family but maintained his innocence. Manns submitted letters from a few family members describing his positive character traits, but the trial court found the letters "hard to believe" given that Manns committed the instant offenses while on probation. (Tr. Vol. IV, p. 204).

Manns also reported that his fiancée had given birth to his daughter while he was incarcerated and mentioned that he hoped to get back to her.

[12] The trial court recognized Manns' criminal history as an aggravating factor and found no mitigating factors. The trial court then sentenced Manns to concurrent terms of twenty years for the Level 2 felony burglary, and ten years for the Level 3 felony robbery conviction.

[13] Manns now appeals. Additional information will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[14] When reviewing a claim of insufficient evidence, it is well-established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id*. We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id*. (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[15] "A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary." I.C. § 35-43-2-1. The offense is "a Level 2 felony if it is committed while armed with a deadly

weapon. I.C. § 35-43-2-1(3)(A). "[A] person who knowingly or intentionally takes property from another person or from the presence of another person . . .by using or threatening the use of force on any person; or . . . by putting any person in fear . . . commits robbery." I.C. § 35-42-5-1(a). The "offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant." I.C. § 35-42-5-1(a).

[16] Manns contends that the evidence was insufficient to establish his identity as the robber and burglar. In particular, he claims that Arnold's Jr.'s testimony identifying him as one of the perpetrators was uncorroborated, and that Arnold Jr only testified against him since Arnold Jr. wanted to receive a favorable outcome from the State as to his involvement in the robbery and burglary. It is well-settled that uncorroborated testimony of one witness is sufficient, by itself, to sustain a conviction on appeal. *Toney v. State*, 715 N.E.2d 367, 369 (Ind. 1999). At Manns' and Keenan's joint jury trial, Arnold Jr confessed that he participated in the home invasion and he unequivocally testified that Manns, whom he also knew as Nine, was one of the perpetrators to the robbery and burglary.

[17] Even disregarding Arnold Jr's testimony, the State presented evidence implicating Manns and placing him at the scene of the crime. Following the home invasion, Wilson's wife handed over the surveillance footage of her home security system. From the security footage, Wilson's wife identified Manns as the bearded man. When the police presented Wilson with separate photo lineups, Wilson selected Manns, as the bearded man. Then, during forensic

interviews, one of Wilson's children identified one of the robbers as having had a beard. In light of the testimony and evidence admitted at trial, we conclude that the State presented sufficient evidence beyond a reasonable doubt to sustain Manns' convictions.

## II. *Mitigating Circumstance*

[18] Manns asserts that the trial court abused its discretion at sentencing when it failed to consider a certain mitigating factor. So long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id*. at 490-91.

[19] Manns claims that the trial court abused its discretion by failing to find that his incarceration would result in an undue hardship to his newborn daughter. The State argues that Manns' proposed mitigator was not raised in the trial court and he waives his claim on appeal. A review of the sentencing transcript indicates that Manns testified that he wished to return to his daughter, however,

he did not claim that his incarceration would prove undue hardship to his newborn daughter nor did he submit it as a mitigating factor. Accordingly, Manns is precluded from arguing that this circumstance is mitigating for the first time on appeal. *See Henley v. State*, 881 N.E.2d 639, 651 (Ind. 2008) (holding that where a mitigating factor is not argued at sentencing, it is presumed that it is not significant and it may not be argued on appeal).

[20] Waiver notwithstanding, Manns failed to meet his burden to establish that his incarceration would cause an undue hardship on his daughter. Indiana Code section 35-38-1-7.1(b)(10) provides that the court may consider it to be a mitigating circumstance that "[i]imprisonment of the person will result in undue hardship to the person or the dependents of the person." But, "a trial court is not required to find that a defendant's incarceration would result in undue hardship on [his or] her dependents." *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), *trans. denied*. Indeed, "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind.1999).

[21] The record shows that Manns has an infant daughter who will be taken care of by his fiancé while Manns serves his prison sentence. Although any negative impact a parent's incarceration may have on a child is unfortunate, Manns falls far short of establishing special circumstances to show that the hardship is undue. *See Roush v. State*, 875 N.E.2d 801, 811 (Ind. Ct. App. 2007) (finding no sentencing error when the defendant presented no evidence that either her

family or her friends were unable to help care for the children during her incarceration). Thus, we conclude that the trial court did not abuse its discretion at sentencing.

### III. *Inappropriate Sentence*

[22] Lastly, Manns also requests that we review the appropriateness of his sentence. "Even when a trial court imposes a sentence within its discretion, the Indiana Constitution authorizes independent appellate review and revision of this sentencing decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019). Thus, we may alter a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id*. The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

[23] In considering the appropriateness of a sentence, we recognize the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). A Level 2 felony has a sentencing range of between ten and thirty years, with an advisory sentence of seventeen and one-half years. I.C. § 35-50-2-4.5. A Level 3 felony has a sentencing range of between three and sixteen years, with an advisory sentence of nine years. I.C. § 35-50-2-5(b). Therefore, Manns faced a potential sentence of forty-six years. Manns was sentenced to twenty years for the Level

2 felony and an advisory sentence of ten years for the Level 3 felony, to be served concurrently.

[24] With respect to the nature of the crimes, we do not turn a blind eye to "facts of the incident that brought the defendant before" us or the "nature and circumstances of the crime as well as the manner in which the crime is committed." *Bethea v. State*, 893 N.E.2d 1134, 1145 (Ind. 2013). Manns and two other men forced their way into Wilson's home in search of drugs while armed with handguns. They inflicted injury upon Wilson in their pursuit, terrorized the children in the home, and pointed a firearm at an eleven-year-old boy. Wilson has failed to persuade us that his sentence is inappropriate in light of the nature of his offenses.

[25] As for his character, we note that a defendant's willingness to continue committing crimes is relevant for analysis of his character under Appellate Rule 7(B). *Garcia v. State*, 47 N.E. 3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*. In 2007, Manns was convicted of aggravated battery, and reckless homicide. Manns was ordered to serve concurrent terms of twenty years for the aggravated battery conviction, and eight years for the reckless homicide, which was suspended to probation. While serving probation for his 2007 convictions, in 2016, Manns was convicted of resisting law enforcement. Manns was sanctioned with a year in jail for violating the terms of his probation. At the time Manns committed the instant offenses, he was still serving the probation term imposed for his aggravated battery and reckless homicide convictions. Manns' criminal record speaks volumes as to his negative character, and he has

therefore failed to convince us that his sentence is inappropriate given his character.

[26]     In light of the foregoing, we decline to find that Manns' aggregate twenty-year sentence is inappropriate in light of the nature of the offenses and his character.

# CONCLUSION

[27]     Based on the foregoing, we hold that the State presented sufficient evidence beyond a reasonable doubt to convict Manns of his offenses, the trial court did not abuse its discretion at sentencing, and Manns' sentence is not inappropriate in light of the offenses and his character.

[28]     Affirmed.

[29]     May, J. and Altice, J. concur