**Eric DOWDELL, Appellant–Plaintiff,**

v.

**CITY OF JEFFERSONVILLE, Appellee–Defendant.**

No. 10A04–0811–CV–676.

Court of Appeals of Indiana.

June 9, 2009.

Transfer Denied Sept. 11, 2009.

Kenneth J. Falk, ACLU of Indiana, Indianapolis, IN, Attorney for Appellant.

Larry O. Wilder, Wilder Law Office, Jeffersonville, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

At issue herein is an ordinance that prohibits convicted sex offenders from entering public parks in Jeffersonville. Though offenders may seek very limited exemptions, the exemption procedure is extraordinarily burdensome and virtually illusory. The defendant was charged, convicted, served the sentence for his crime, and completed his registration requirement before the ordinance was enacted. As applied to this defendant, we find that the ordinance violates the prohibition on ex post facto laws contained in the Indiana Constitution.

Appellant-defendant Eric Dowdell appeals the trial court's order entering summary judgment in favor of appellee-defendant City of Jeffersonville, Indiana (the City) on Dowdell's complaint for injunctive and declaratory relief. Dowdell argues that the trial court erred by concluding that the City's ordinance prohibiting all sex offenders from ever having unrestricted access to the City's parks and recreation areas is constitutional. Specifically, Dowdell argues that the ordinance is facially unconstitutional pursuant to Article I, Sections 1, 12, and 24 of the Indiana Constitution and that it is unconstitutional as applied to him pursuant to the same constitutional provisions because he is no longer required to register as a sex offender. Finding that the ordinance is unconstitutional as applied to Dowdell, we reverse.

## FACTS [1]

The City has an extensive park system that includes an outdoor theater, a fieldhouse containing indoor recreation areas, an aquatic center, Little League fields, and general park properties. There is no cost to enter most of the park properties and the parks are open to all subject to the rules and regulations set by the City's Parks Department.

The City Ordinance 2006–OR–68 (the Ordinance) states that "individuals defined by Indiana Code as 'Sex Offenders' shall be permanently prohibited" from park properties. Appellant's App. p. 120. If a sex offender enters the parks, he is subject to a fine of $100 to $2,500 and prosecution for criminal trespass. Another ordinance provides that if a sex offender is able to demonstrate good cause he may apply to a City Court judge for a waiver of the exclusion. A waiver may be granted only for a "legitimate reason," which includes only a situation in which the sex offender plans to be in a park to observe his or her son, daughter, stepson, stepdaughter, grandchild, stepgrandchild, sibling, or stepsibling participating in a specific activity in the park. *Id.* at 127–28. Under no other circumstances may an exemption be granted.

Indiana law currently defines "sex offender" as a person who committed certain offenses.[2] Generally, a sex offender must register for ten years after he or she is released from prison, placed on parole or

---

1. We held oral argument in Indianapolis on May 5, 2009, and thank counsel for their excellent oral advocacy.

2. In pertinent part, Indiana Code section 11–8–8–4.5 defines "sex offender":

(a) ... "sex offender" means a person convicted of any of the following offenses:
 (1) Rape (IC 35–42–4–1).
 (2) Criminal deviate conduct (IC 35–42–4–2).
 (3) Child molesting (IC 35–42–4–3).

probation, or placed in a community transition or community corrections program, whichever occurs last. I.C. § 11–8–8–19(a).[3] Even after the registration obligation ends, the person's name remains on the registry forever, though specific information concerning the person—e.g., his or her address and photograph—will no longer be updated.

In 1996, Dowdell was convicted of sexual battery and was sentenced to three years in prison with two years suspended. His

crime did not occur in a park. He remained on probation for approximately three years after his conviction and his duty to register expired in 2006. Dowdell's registry listing indicates that the "registration period has ended," and instead of an address, the registry explains that "[t]his individual is No Longer Required to Register as an Offender." Appellant's App. p. 141. Dowdell's photograph has been removed from the registry. *Id.*

(4) Child exploitation (IC 35–42–4–4(b)).
(5) Vicarious sexual gratification (including performing sexual conduct in the presence of a minor) (IC 35–42–4–5).
(6) Child solicitation (IC 35–42–4–6).
(7) Child seduction (IC 35–42–4–7).
(8) Sexual misconduct with a minor as a Class A, Class B, or Class C felony (IC 35–42–4–9), unless:
(A) the person is convicted of sexual misconduct with a minor as a Class C felony;
(B) the person is not more than:
(i) four (4) years older than the victim if the offense was committed after June 30, 2007; or
(ii) five (5) years older than the victim if the offense was committed before July 1, 2007; and
(C) the sentencing court finds that the person should not be required to register as a sex offender.
(9) Incest (IC 35–46–1–3).
(10) Sexual battery (IC 35–42–4–8).
(11) Kidnapping (IC 35–42–3–2), if the victim is less than eighteen (18) years of age, and the person who kidnapped the victim is not the victim's parent or guardian.
(12) Criminal confinement (IC 35–42–3–3), if the victim is less than eighteen (18) years of age, and the person who confined or removed the victim is not the victim's parent or guardian.
(13) Possession of child pornography (IC 35–42–4–4(c)).
(14) Promoting prostitution (IC 35–45–4–4) as a Class B felony.
(15) Promotion of human trafficking (IC 35–42–3.5–1(a)(2)) if the victim is less than eighteen (18) years of age.
(16) Sexual trafficking of a minor (IC 35–42–3.5–1(b)).

(17) Human trafficking (IC 35–42–3.5–1(c)(3)) if the victim is less than eighteen (18) years of age.
(18) An attempt or conspiracy to commit a crime listed in subdivisions (1) through (17).
(19) A crime under the laws of another jurisdiction, including a military court, that is substantially equivalent to any of the offenses listed in subdivisions (1) through (18).
(b) The term includes:
(1) a person who is required to register as a sex offender in any jurisdiction; and
(2) a child who has committed a delinquent act and who:
(A) is at least fourteen (14) years of age;
(B) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) if committed by an adult; and
(C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

3. Certain offenders must register for life, including sexually violent predators, an offender convicted of a sex or violent offense when at least eighteen against a victim less than twelve, an offender convicted of at least one offense involving injury, force, or threat against a victim, and an individual convicted of at least two unrelated sex or violent offenses. I.C. § 11–8–8–19(b)–(e).

Dowdell lives in Clarksville and has a minor son who plays Little League games in Jeffersonville's parks. In the past, Dowdell has been a Little League coach. He has twice sought a waiver pursuant to the City's ordinances to attend his son's games but his request was denied both times.[4] Dowdell would also like to enter the City's parks without his son to engage in various activities such as adult baseball, adult basketball, fishing, and other lawful activities. Under the terms of the ordinances, he may not seek a waiver to enter the parks for these activities.

On July 3, 2007, Dowdell filed a complaint challenging the constitutionality of the Ordinance. Dowdell and the City eventually filed cross-motions for summary judgment. Following an August 25, 2008, hearing, the trial court entered summary judgment in the City's favor, finding that the Ordinance was neither facially unconstitutional nor unconstitutional as applied to Dowdell.[5] Dowdell now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule

56(C). Here, the parties do not dispute the relevant facts. Instead, they disagree about the constitutionality of the Ordinance, which is a pure question of law for which summary judgment is particularly appropriate. *Ramirez v. Wilson,* 901 N.E.2d 1, 2 (Ind.Ct.App.2009). Where the issue presented on appeal is a pure question of law, we review the matter de novo. *Id.*

### II. Facial Challenge

In large part, Dowdell's facial challenge relies upon arguments that are identical to those made in *Doe v. Plainfield,* which concerned a Plainfield ordinance very similar to the Ordinance at issue herein. 893 N.E.2d 1124 (Ind.Ct.App.2008), *trans. pending.* At oral argument, Dowdell's counsel acknowledged that though he disagreed with the result in *Doe,* he is bound by its precedential value. Under these circumstances, we decline to address Dowdell's facial challenge and will instead turn to his argument that the Ordinance is unconstitutional as applied to him.

### III. As Applied

■ Dowdell raises a new argument not considered by the *Doe* court, namely, that the Ordinance is unconstitutional as applied to him. Unlike a facial challenge, an as applied challenge "ask[s] only that the reviewing court declare the challenged statute or regulation unconstitutional on the facts of the particular case." *Sanjour*

**4.** Dowdell has appealed the 2008 denial and as of June 16, 2008, the appeal was in the Clark Circuit Court. Appellant's App. p. 139; Appellee's Br. p. 3.

**5.** Among other things, the trial court found that since his sexual battery conviction, Dowdell has been convicted of battery and domestic violence and that he presents a danger to himself and the community. There is no evidence in the record of these facts and at no time was Dowdell given an opportunity to be heard on the subject. Though Dowdell con-

cedes that he pleaded guilty to those offenses, he takes issue with the trial court's factual conclusion that he continues to present a danger to himself and the community at large, inasmuch as the record does not support that conclusion. Furthermore, he is not being prevented from entering City parks because of his convictions for domestic violence or battery; therefore, we agree that this evidence is not relevant to the constitutionality of the Ordinance.

*v. E.P.A.*, 56 F.3d 85, 92 n. 10 (D.C.Cir. 1995).

■ Dowdell argues that the Ordinance is unconstitutional as applied to him under the ex post facto prohibition of Article I, section 24 of the Indiana Constitution. This prohibition "forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 4 Wall. 277, 71 U.S. 277, 325–25, 18 L.Ed. 356 (1867)). According to our Supreme Court, "[t]he underlying purpose of the Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties." *Wallace v. State*, 905 N.E.2d 371, 377 (Ind. 2009) (holding that the application of the Sex Offender Registration Act to a defendant who had been charged, convicted, and served his sentence for the crime before the statute was enacted violated the prohibition on ex post facto laws).

In *Wallace*, our Supreme Court articulated the way in which an ex post facto analysis should be conducted under the Indiana Constitution. The court held that the "clearest proof" standard applied to ex post facto challenges under the federal constitution is not applicable to similar challenges under the Indiana Constitution. *Id.* at 378 n. 7. Thus, the well-established standard applied to challenges to the constitutionality of a statute under the Indiana Constitution also applies to ex post facto challenges:

> When a statute is challenged as an alleged violation of the Indiana Constitution, our standard of review is well settled. Every statute stands before us clothed with the presumption of consti-

tutionality until that presumption is clearly overcome by a contrary showing. The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. "If two reasonable interpretations of a statute are available, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless the unambiguous language of the statute requires that conclusion."

*Id.* at 378 (quoting *State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1037 (Ind.1998)) (internal citations omitted).

The *Wallace* court then concluded that the intent-effects test applied to ex post facto challenges under the United States Constitution applies likewise to challenges raised under the Indiana Constitution. Under the intent-effects test,

> a court first determines whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, then that ends the inquiry, because punishment results. If, however the court concludes that the legislature intended a non-punitive regulatory scheme, then the court must further examine whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what had been intended as a civil regulatory scheme into a criminal penalty.

*Id.* at 378 (citing *Smith v. Doe*, 538 U.S. 84, 105–06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)) (internal citations omitted).

■ Dowdell concedes that the Ordinance has a non-punitive purpose—to protect those members of the public who use the City parks. We must, therefore, ana-

lyze the effects of the ordinance as applied to Dowdell. Our Supreme Court explained that the seven factors set forth by the United States Supreme Court to determine the effects of a statute apply to an analysis under the Indiana Constitution. *Wallace*, 905 N.E.2d at 378–79. Those seven factors are:

> "[1] Whether the sanction involves an *affirmative disability* or *restraint*, [2] whether it has historically been *regarded as a punishment*, [3] whether it comes into play only on a finding of *scienter*, [4] whether its operation will promote the traditional aims of punishment-*retribution and deterrence*, [5] whether the behavior to which it applies is *already a crime*, [6] whether an *alternative purpose* to which it may rationally be connected is assignable for it, and [7] whether it appears *excessive* in relation to the alternative purpose assigned."

*Id.* at 379 (quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)) (emphases added). No one factor is determinative, and " 'our task is not simply to count the factors on each side, but to weigh them.' " *Id.* (quoting *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217, 1224 (1992)).

### 1. Affirmative Disability or Restraint

■ The Ordinance operates as a lifetime prohibition on convicted sex offenders entering the City's public parks. That is unquestionably a restraint. Although we do not quarrel with this court's conclusion in *Doe v. Plainfield* that there is no constitutional right to enter public parks, Dowdell need not meet such an onerous burden to establish a restraint for the purpose of the effects test. Much of a community's social life occurs in public parks—youth and adult sporting events, picnics, community celebrations and events, to name but a few—and an ordinance that fully and for-ever prohibits one from taking part in such activities—or from taking a walk in the park—is a real and significant restraint. Additionally, the Ordinance explicitly contemplates criminal prosecution for trespass if someone violates its terms. *Cf. Doe*, 893 N.E.2d at 1136 n. 11 (observing that "even if violation of [the ordinance at issue therein] did subject an individual to criminal trespass, imprisonment authorized by the criminal trespass statute would not inform whether [the ordinance] amounts to an affirmative disability or restraint because ex post facto analysis requires that a reviewing court examine the factors ... 'in relation to the [law] *on its face*,' and the ordinance does not prescribe imprisonment") (quoting *Willis v. State*, 806 N.E.2d 817, 822 (Ind.Ct.App.2004)) (emphasis in original).

As for Dowdell specifically, he has a minor son who plays Little League games in Jeffersonville's parks, and in the past, Dowdell has been a Little League coach. Dowdell would like to attend his son's games. He would also like to enter the City's parks without his son to engage in various activities such as adult baseball, adult basketball, fishing, golf, watching fireworks over the Ohio River, and taking walks with his significant other. The Ordinance constitutes a significant restraint because it prohibits Dowdell from engaging in these social and familial activities.

The ban itself does not require convicted sex offenders to take any affirmative action. If, however, they seek to obtain an exemption for the extraordinarily limited purposes included in the relevant ordinance, they must make a proverbial jump through a number of hoops. Specifically, the person seeking entry into a park must request a hearing before a City Court Judge, providing written notice of the request to the City Attorney. At the hearing, the applicant must present evidence

establishing "good cause"—a term that is not defined in the ordinance—as to why he or she should be exempt. Appellant's App. p. 127. Among other things, the applicant must provide a plethora of documents:

1. A certified copy of the charges that the "Sex Offender" was convicted. [sic]

2. A certified copy of the "Sex Offender's" Sentencing Order.

3. A certified copy of the "Sex Offender's" terms of Probation or Parole.

4. If the "Sex Offender" claims to have successfully completed probation or parole, a letter, notarized affidavit or certified copy of the court's order setting forth this fact.

5. A certified copy, letter or order from the "Sex Offender's" counselor or the approved program stating that the "Sex Offender" has successfully completed counseling and/or said program.

6. A letter from the "Jeffersonville Parks Department" acknowledging that the "Sex Offender" has notified them of his intent to seek exemption from the Ordinance referred to herein.

7. A letter from any agency, league or organization that the "Sex Offender's" son, daughter, step-son, step-daughter, grand-child, step-grand-child, sibling or step-sibling is participating in and/or contemplates participating in, acknowledging that the "Sex Offender" has notified the agency, league or organization of the fact that he or she is a registered "Sex Offender" and that he or she has requested exemption from the Ordinance and has requested permission to be present at the otherwise exempt facility during those times which the "Sex Offender's" [family member] is participating in said activity.

8. Any and all other documents that the "Sex Offender" refers to in his or her presentation shall be provided to the Judge. All of said documents shall be either in their original form or shall be certified copies thereof.

9. The "Sex Offender" shall provide proof that he or she has a [qualifying family member]. This proof shall include their age, sex and relationship to the "Sex Offender". This proof shall be provided either by certified copies of documents purporting to establish said relationship and/or by testimony from the [family member's] mother, father or guardian.

*Id.* at 128–29. Even if the applicant is able to find and present all of this evidence, it is within the judge's discretion to determine whether the undefined "good cause" standard has been met. And even if the judge finds good cause, the judge may require the applicant to take even more actions before the exemption is granted:

The Judge shall be permitted to require the "Sex Offender" to:

1. Notify an employee, director, officer-in-charge, or other individual located at the otherwise exempt facility that the "Sex Offender" has entered upon the property pursuant to his or her exemption.

2. Any and all other reasonable limitations as determined to be necessary to protect the citizens of Jeffersonville, Indiana.

3. The Judge shall submit a copy of his findings of fact and conclusions of law to the Jeffersonville Police Department and the Jeffersonville Parks Department where they shall

be kept on file for the purpose of allowing an effected organization the opportunity to contact either department to inquire as to whether or not a "Sex Offender" has been exempt from said ordinance.

4. If the Judge determines that the "Sex Offender" shall be exempt from the ordinance the "Sex Offender" shall obtain a photo identification card to be prepared by either the Jeffersonville Police Department or the Jeffersonville Parks Department which shall set forth the "Sex Offender's" name, address, telephone number, the name of the [family member] which shall be present with the "Sex Offender" while at the facility and the date upon which the Judge determined the "Sex Offender" was exempt from enforcement of the ordinance.

*Id.* at 130.

Thus, if a convicted sex offender chooses to avail him or herself of the exemption procedure, there are a number of somewhat onerous burdens he or she must meet. Furthermore, an exemption is granted only for a specific "legitimate reason," and presumably the applicant must go through the whole process anew—for the rest of his or her life—each time a new activity arises. Additionally, by requiring applicants to notify the agency, league, or organization sponsoring the activity before seeking the exemption and each time the applicant enters the premises, it is evident that the Ordinance "exposes registrants to profound humiliation and community-wide ostracism." *Wallace,* 905 N.E.2d at 380. Considered as a whole, the Ordinance's prohibition and exemption application procedures impose substantial affirmative disabilities and restraints on convicted sex offenders. Dowdell has applied twice for an exemption, and the exemption was denied on both occasions. Thus, this first factor clearly favors treating the effects of the Ordinance as punitive when applied to Dowdell.[6]

### 2. Sanctions that have Historically been Considered Punishment

We must next consider whether the prohibition on entry into City parks has historically been regarded as a punishment. In *Wallace,* our Supreme Court explained that the sex offender registry "does not expressly impose sanctions that have been historically considered punishment. Because sex offender registration and notification acts are of relatively recent origin, some courts addressing this issue have determined that there is no historical equivalent." *Id.* The *Wallace* court ultimately concluded that the act resembled the historical punishment of shaming. It further concluded, however, that the

registration and reporting provisions are comparable to conditions of supervised probation or parole. Aside from the historical punishment of shaming, the fact that the Act's reporting provisions are comparable to supervised probation or parole standing alone supports a conclusion that the second *Mendoza–Martinez* factor favors treating the effects of

6. We acknowledge that this court reached a different conclusion on this factor in *Doe v. Plainfield,* 893 N.E.2d at 1135 (holding that on its face, the statute at issue, which prohibited sex offenders from entering public parks, was not an affirmative disability or restraint because it was "far less of a disability or restraining than imprisonment" and did "not prohibit sex or violent offenders from entering other public areas"). Inasmuch as we are considering an as applied argument herein, however, we believe that the proper conclusion under these facts and with the guidance of our Supreme Court in *Wallace* is that the Ordinance constitutes an affirmative disability and restraint.

the Act as punitive when applied in this case.

*Id.* at 380–81.

The *Doe* court, without the benefit of *Wallace*, compared an ordinance prohibiting sex offenders from entering public parks to the historical punishment of banishment and did not find them to be analogous because "banishment means permanent expulsion from a community" but the ordinance at issue did not "banish sex or violent offenders from the entire . . . community; rather, it merely restricts such offenders from a subset of that community." 893 N.E.2d at 1134–35.

■ In light of *Wallace*, however, we find that because ordinances banning sex offenders are of relatively recent origin, there is no adequate historical equivalent. There are elements of banishment and shunning therein, and if someone seeks an exemption, there is an element of shaming. Yet none of these historical punishments are perfect analogs. The *Wallace* court went on to hold that if a statute's provisions are comparable to conditions of supervised probation or parole, then that fact, standing alone, suffices to support a conclusion that the effects of the statute are punitive. A prohibition on entering certain types of places is a very common condition of probation or parole. *See, e.g.,* *Fitzgerald v. State,* 805 N.E.2d 857, 867–68 (Ind.Ct.App.2004) (observing that "[c]onditions of probation which reduce the potential for access to potential victims are reasonable"). We can only conclude, therefore, that the Ordinance's ban on entering City parks—even taking into account the extraordinarily limited value of the exemption procedure—is akin to a condition of probation. Therefore, the second *Mendoza–Martinez* factor favors treating

the effects of the Ordinance as punitive when applied in this case.

### 3. Finding of Scienter

■ Next, we must consider whether the Ordinance comes into play only on a finding of scienter because "[i]f a sanction is not linked to a showing of mens rea, it is less likely to be intended as a punishment." *Wallace,* 905 N.E.2d at 381. As in *Wallace,* although the Ordinance applies to a few strict liability offenses,[7] "it overwhelmingly applies to offenses that require a finding of scienter for there to be a conviction. The few exceptions do not imply a nonpunitive effect." *Id.* at 381. Thus, the third factor favors treating the effects of the Ordinance as punitive when applied here.

### 4. The Traditional Aims of Punishment

■ As our Supreme Court commented in *Wallace,* the traditional objectives of punishment in Indiana include rehabilitation, "the need to protect the community by sequestration of the offender, community condemnation of the offender, as well as deterrence." *Id.* at 381 (further holding that "it strains credulity to suppose that the [sex offender registry's] deterrent effect is not substantial, or that the Act does not promote 'community condemnation of the offender,'" and that this factor slightly favored treating the effects of the Act as punitive when applied to Wallace). In *Doe,* this court agreed that deterrence is a traditional aim of punishment and that the statute at issue therein "undoubtedly deters criminal activity," but emphasized federal authority standing for the propositions that a law's deterrent aspects do not automatically make it punitive and that "courts

---

7. For example, child molesting does not require scienter when there has been sexual intercourse or deviate sexual conduct with a child under fourteen years of age. Ind.Code § 35–42–4–3.

appear to minimize a law's deterrent aspects if the law satisfies the [sixth] factor; that is, the law's rational relation to a nonpunitive purpose." 893 N.E.2d at 1136 (citing *Smith,* 538 U.S. at 102, 123 S.Ct. 1140). Thus, the *Doe* court chose to give little or no weight to this factor. In light of *Wallace,* however, we believe that the fact that a statute's operation will promote the traditional aims of punishment, including retribution and deterrence, is not insignificant.

We can only conclude that the primary purposes of the Ordinance are deterrence and protection of the community by sequestration of the offender. Furthermore, should the offender seek and receive an exemption, there is an element of community condemnation as well. Thus, this factor slightly favors treating the effects of the Ordinance as punitive when applied to Dowdell.

### 5. Application Only to Criminal Behavior

 Under this factor, we must examine whether "the behavior to which [the Ordinance] applies is already a crime." *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554. "The fact that a statute applies only to behavior that is already, and exclusively, criminal supports a conclusion that its effects are punitive." *Wallace,* 905 N.E.2d at 382. The City insisted at oral argument that the primary concern motivating the passage of the Ordinance is the high rate of recidivism of sexual offenders. As our Supreme Court observed, however, "if recidivism were the only concern, the statute would apply not only to convicted sex offenders, but also to other defendants who might pose a threat to society even if they are not convicted." *Id.* Here, as in *Wallace,* the Ordinance applies only to convicted sex offenders. Therefore, as in *Wallace,* "it is the determination of guilt of a sex offense, not merely the fact of the

conduct and potential for recidivism, that triggers the registration requirement." *Id.* at 382. Under these circumstances, we conclude that this favor supports the conclusion that the Ordinance is punitive in effect as to Dowdell.

### 6. Advancing a Non–Punitive Interest

Next, we must consider whether the Ordinance advances a legitimate, regulatory purpose. Dowdell concedes that the Ordinance has such a purpose, namely, the protection of members of the community who use public parks from sex offenders. We certainly agree, and find that this factor clearly favors treating the effects of the Ordinance as regulatory and non-punitive.

### 7. Excessiveness

 Finally, we must determine whether the Ordinance is excessive in relation to the alternative purpose assigned. As our Supreme Court observed, "[a] number of courts give greatest weight to this factor." *Wallace,* 905 N.E.2d at 383.

Dowdell was convicted in 1996 and completed his sentence and probation years before the Ordinance was enacted. His duty to register had also expired before the enactment of the Ordinance. Though his name still appears on the registry, his listing indicates that the "registration period has ended," and instead of an address, the registry explains that "[t]his individual is No Longer Required to Register as an Offender." Appellant's App. p. 138, 141. Dowdell's photograph has been removed from the registry.

In other words, the State of Indiana has determined that public safety will no longer be served by tracking Dowdell's whereabouts and imposing the burdens of registration upon him. Indeed, as far as the State was concerned, Dowdell had served his time and met all obligations years be-

fore the City enacted the Ordinance. The *Wallace* court observed that if the substance of the law at issue is not tied to a finding that the safety of the public is threatened, there is an implication that the law is excessive. 905 N.E.2d at 383. Here, as applied to Dowdell, any connection between the enforcement of the Ordinance and protection of the public is attenuated at best, given the fact that the State has determined he is no longer required to register. Therefore, our initial conclusion is that the Ordinance is excessive as applied to Dowdell.

The City directs our attention, however, to the mechanism offered in the Ordinance by which offenders can petition for an exemption from the Ordinance. *Cf. id.* at 384 (noting that "we think it significant for this excessiveness inquiry that the Act provides no mechanism by which a registered sex offender can petition the court for relief from the obligation of continued registration and disclosure"). As noted above, however, the exemption provisions are extremely narrow at best and illusory at worst. Specifically, Dowdell must provide the court with a plethora of documents, including proof that he contacted the agency sponsoring the specific activity he seeks to attend, in an attempt to establish "good cause," which is not defined by the Ordinance. He is only entitled to an exemption if he will be accompanying a close relative who is participating in a specific activity in the park. Even then, Dowdell's request may be denied—in fact, he made such a request twice, it was denied twice, and he has appealed one of those denials. And even if his request is granted, he must go through the whole process again for each new activity he wishes to observe—and he may only apply for an exemption once per year. This restriction lasts for the rest of his life. Under these circumstances, we do not find that the exemption procedure ameliorates the excessiveness of the Ordinance as applied to Dowdell. Thus, we find that the seventh factor favors treating the effects of the Ordinance as punitive as applied to Dowdell.

In summary, as in *Wallace,*

> of the seven factors identified by *Mendoza–Martinez* as relevant to the inquiry of whether a statute has a punitive effect despite legislative intent that the statute be regulatory and non-punitive, only one factor in our view—advancing a non-punitive interest—points clearly in favor of treating the effects of the [Ordinance] as non-punitive. The remaining factors … point in the other direction.

905 N.E.2d at 384. Dowdell was charged, convicted, served the sentence for his crime, and fulfilled and completed his registration requirement before the Ordinance was enacted. We hold that as applied to Dowdell, the Ordinance violates the prohibition on ex post facto laws contained in the Indiana Constitution because it imposes burdens that have the effect of adding punishment beyond that which could have been imposed when his crime was committed.

The judgment of the trial court is reversed.

BARNES, J., concurs.

CRONE, J., dissents with opinion.

CRONE, Judge, dissenting.

I respectfully dissent. I agree with the majority that the intent-effects test provides the appropriate analytical framework for addressing ex post facto claims under the Indiana Constitution. *See Wallace,* 905 N.E.2d at 378–79. However, when I weigh the seven factors listed in *Mendoza–Martinez,* I reach a different conclusion regarding whether the Ordinance at issue is unconstitutional as applied to Dowdell.

The first consideration is whether the sanction involves an affirmative disability or restraint. In contrast to the "significant affirmative obligations" of the Sex Offender Registration Act, the Ordinance here requires *no affirmative action* on the part of a sex offender. *Cf. Wallace*, 905 N.E.2d at 374–77, 379–80 (outlining the litany of duties that have arisen as the Act has expanded in breadth and scope). The Ordinance simply prohibits a sex offender from entering park properties in Jeffersonville. While this prohibition constitutes a restraint, it is neither highly intrusive nor does it impose additional "severe stigma." Moreover, an exemption mechanism is available. The Ordinance need not fully and forever ban Dowdell from engaging in social or familial activities. It merely limits the location for such activities absent a demonstration of good cause. In my view, this first factor does not clearly favor treating the effects of the Ordinance as punitive when applied to Dowdell.

Turning to the historical punishment factor, I concur with the reasoning[8] in *Doe v. Town of Plainfield,* though I do so without using the clearest proof standard. The Ordinance's prohibition is not akin to banishment. Dowdell is not permanently expelled from the entire Jeffersonville community; rather, he and other sex offenders are restricted from a subset of that community. 893 N.E.2d at 1134–35. Further, I do not liken the ban to a condition of probation because a waiver of the exclusion does exist. Accordingly, the second factor does not favor treating the effects of the Ordinance as punitive when applied in this case.

As in *Wallace,* I would conclude that the third factor, scienter, "slightly favors" treating the effects of the Ordinance as punitive when applied here.

The fourth factor asks whether the Ordinance's operation will promote the traditional aims of punishment—retribution, deterrence, rehabilitation, community protection, and condemnation. *Wallace,* 905 N.E.2d at 381. I have no reason to believe that the Ordinance was passed for purposes of retribution, also known as vengeance for its own sake. *See id.* at 382. I am also not convinced that the prospect of being restricted from city parks would be a substantial deterrent to a person contemplating a sex offense. Nonetheless, a law's deterrent aspects do not automatically make it punitive—particularly where there is a rational relation to a non-punitive purpose. *See Smith,* 538 U.S. at 102, 123 S.Ct. 1140. I see no rehabilitative purpose to the Ordinance, and none has been offered. As for community protection, the Ordinance's restriction is not a true sequestration as incarceration would be. Finally, additional condemnation may occur, if at all, only if an offender seeks an exemption. On the whole, the fourth factor does not favor treating the effects of the Ordinance as punitive when applied to Dowdell.

As per *Wallace*'s dictates, the fifth factor, application only to criminal behavior, supports the conclusion that the Ordinance is punitive in effect as to Dowdell. *See Wallace,* 905 N.E.2d at 382.

Moving to the sixth factor, Dowdell concedes that the Ordinance advances a legitimate, regulatory purpose: the protection of members of the community who use public parks from sex offenders. Noting that the risk of recidivism posed by sex offenders is frightening and high, our su-

---

8. Incidentally, even if transfer was not pending in *Doe,* we would not be bound by it as we would if it had been authored by our supreme court. *Horn v. Hendrickson,* 824 N.E.2d 690, 694 (Ind.Ct.App.2005). Different panels of the Court of Appeals may reach different conclusions.

preme court similarly concluded that public safety was a valid non-punitive goal. *Id.* at 382–83. I agree with the majority that this factor clearly favors treating the effects of the Ordinance as regulatory and non-punitive. Op. at 570.

Last, I examine the excessiveness factor, which a number of courts give the greatest weight. In concluding that the seventh factor favored treating the effects of the Sex Offender Registration Act as punitive, our supreme court explained:

> In this jurisdiction the Act makes information on all sex offenders available to the general public without restriction and without regard to whether the individual poses any particular future risk. Indeed, *we think it significant for this excessiveness inquiry that the Act provides no mechanism by which a registered sex offender can petition the court for relief from the obligation of continued registration and disclosure.* Offenders cannot shorten their registration nor notification period, even on the clearest proof of rehabilitation.[footnote omitted] Thus, the non-punitive purpose of the Act, although of unquestioned importance, does not serve to render as non-punitive a statute that is so *broad and sweeping.*

*Wallace,* 905 N.E.2d at 384 (emphases added). In marked contrast, there is a mechanism by which Dowdell and other sex offenders can receive some relief[9] from the Ordinance's restriction. In addition, I do not view the Ordinance to be nearly as onerous as the broad and sweeping Act.[10]

In Jeffersonville, an offender is free to seek an exemption from the Ordinance. Further, if a City Court judge in his/her discretion determines that a sex offender has not shown good cause to merit a waiver of the Ordinance's park exclusion, an offender is not without redress. Presumably, an offender is free to appeal the denial of his application for an exemption. Here, for instance, Dowdell apparently applied, was denied twice, and is appealing the 2008 denial. I do not know if the judge viewed Dowdell's subsequent convictions of battery and domestic violence as good cause for the denials, or if the judge relied on other facts. I also cannot say, as applied to Dowdell, the more recent convictions would be improper considerations as perhaps they evidence continued inability to conform to the laws of our state. However, the appeal of the denial constitutes the proper avenue to determine good cause.[11] In any event, I conclude that the seventh factor does not favor treating the effects of the Ordinance as punitive as applied to Dowdell.

---

9. I am somewhat troubled by the limited nature of the available exemption.

10. Parks are a discretionary resource provided by many but not all municipalities, and their usage is hardly a core value or integral to a person's participation in the polis as a citizen. Certainly, the limitation on park usage provided by the ordinance is not as onerous as other limitations imposed on convicted felons such as forfeiture of the right to possess firearms or disenfranchisement. *See, e.g., Baker v. State,* 747 N.E.2d 633 (Ind.Ct.App. 2001) (concluding that statute prohibiting serious violent felon from possessing a firearm does not violate constitutional right to bear arms), *trans. denied; Teer v. State,* 738 N.E.2d 283, 287 (Ind.Ct.App.2000) (concluding that serious violent felon statute as applied did not violate ex post facto prohibition), *trans. denied; Taylor v. State·Election Bd. of State of Ind.,* 616 N.E.2d 380 (Ind.Ct.App.1993) (discussing disenfranchisement as well as disqualification for office).

11. I am not bothered by the fact that good cause is not specifically defined in the Ordinance. To anticipate and detail every particular situation that could constitute good cause would be an exercise in legislative futility.

To summarize, of the seven factors identified as relevant to the inquiry of whether this Ordinance has a punitive effect despite legislative intent that it be non-punitive, I find that one supports the conclusion that the Ordinance is punitive in effect as to Dowdell, and one slightly favors treating the effects of the Ordinance as punitive when applied here. The remaining five, including the excessiveness factor, point in the other direction. Accordingly, I would conclude that as applied to Dowdell, the Ordinance does not violate Indiana's constitutional prohibition on ex post facto laws. The predominantly non-punitive nature of the Ordinance convinces me that there is no violation of Article I, section 24 of the Indiana Constitution. Consequently, I would affirm the entry of summary judgment in favor of the City.